WATASSEK v DEPARTMENT OF MENTAL HEALTH

Docket No. 70906. Submitted May 2, 1984, at Lansing.—Decided June 18, 1985. Leave to appeal applied for.

Frank A. Watassek, an employee of the Department of Mental Health, informed his superiors of acts of abuse being committed against residents of the Plymouth Center for Human Development by Watassek's fellow employees. Watassek's relationship with his fellow workers and the administration at the Plymouth Center thereafter declined and Watassek's employment was subsequently terminated, ostensibly by Watassek's "resignation". Watassek filed a grievance with the Civil Service Commission, seeking reinstatement. Following a review of the grievance, the director of the Department of Mental Health found that Watassek's resignation was voluntary and allowed his termination to stand. Watassek was informed that he could seek no further administrative review of his termination because he was on probationary employee status at the time his employment was terminated. Watassek filed suit against the Department of Mental Health in the Court of Claims alleging that he was terminated without cause and out of retaliation for his attempt to stop abusive treatment of the residents of the Plymouth Center. He sought money damages to compensate him for wrongful discharge and also brought a libel action against the department. The libel action was later voluntarily dismissed. Defendant filed motions for accelerated judgment and summary judgment, both of which were denied, James R.

REFERENCES FOR POINTS IN HEADNOTES

[1] 2 Am Jur 2d, Administrative Law §§ 595-609.

Failure to pursue or exhaust remedies under union contract as affecting employee's right of state civil action for retaliatory discharge. 32 ALR4th 350.

[2] 53 Am Jur 2d, Master and Servant § 27 *et seq.*

Employee's arbitrary dismissal as breach of employment contract terminable at will. 62 ALR3d 271.

[3] 15A Am Jur 2d, Civil Service §§ 61-71.

[4] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 79, 90.

Comment note—Prima facie tort. 16 ALR3d 1191.

Giddings, J. Defendant appeals by leave granted from the denial of its motion for summary judgment. *Held:*

1. Defendant's argument that plaintiff is precluded from bringing suit in the Court of Claims because he failed to exhaust his administrative remedies under the Civil Service Act is rejected because it may have been futile for plaintiff to attempt to exhaust his administrative remedies. Plaintiff should have the opportunity to amend his complaint to plead facts in avoidance of the jurisdictional defect.

2. It was contrary to public policy in 1976 for an employer to discharge an employee in retaliation for reporting abuses committed on patients in the Plymouth Center for Human Development. Plaintiff's complaint does state a claim upon which relief may be granted.

3. Defendant's claim of governmental immunity fails on either of two theories. First, plaintiff's claim, being an action *ex contractu,* is cognizable against the state in the Court of Claims. Second, even if plaintiff's claim were classified as a tort action, an intentional tort would be alleged, and governmental immunity does not apply to intentional torts. Plaintiff should have an opportunity to amend his complaint, if necessary, to avoid governmental immunity before any further summary action is taken.

Remanded for further proceedings.

SHEPHERD, P.J., concurred in the result and in the conclusion that this is a contract action. He expressed no opinion on the governmental immunity issue for the reason that it was not necessary to decide that issue.

1. ADMINISTRATIVE LAW — EXHAUSTION OF REMEDIES — VAIN AND USELESS ACTS.

Exhaustion of administrative remedies before seeking relief in the courts is not required where it is obvious that to demand exhaustion would be to require a vain and useless act.

2. MASTER AND SERVANT — EMPLOYMENT CONTRACTS — TERMINATION AT WILL — PUBLIC POLICY.

Contracts of employment for an indefinite term are generally considered to be terminable at the will of either party; an exception to this rule exists, however, where discharge would contravene a strong public policy.

3. CIVIL SERVICE — ACTIONS — RETALIATORY DISCHARGE — WRONGFUL DISCHARGE — CONTRACTS.

An action brought against a state agency claiming retaliatory discharge is an action asserting a specific type of wrongful

discharge and constitutes a contract action cognizable against the state in the Court of Claims (MCL 600.6419; MSA 27A.6419).

4. Torts — Intentional Torts — Governmental Immunity.
   Governmental immunity does not bar actions for intentional torts.

*Gregory J. Stempien, P.C.* (by *Gregory J. Stempien*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *George L. McCargar* and *Craig Atchinson,* Assistants Attorney General, for defendant.

Before: Shepherd, P.J., and Cynar and S. D. Borman,* JJ.

S. D. Borman, J. The facts of this case are not in dispute. Plaintiff was employed as an Attendant Nurse 03 with the Department of Mental Health, from April 18, 1976, to May 20, 1976, at the Plymouth Center for Human Development (Center). While performing his duties, he began noticing acts of abuse being committed by fellow employees against the Center's residents. He informed his superior of this behavior. Thereafter, plaintiff's relationship with his fellow workers and the Center's administration declined and his employment at the Center was terminated. As a result of that termination, plaintiff claims that he has been unable to obtain gainful employment as a professional psychologist.

On May 20, 1976, plaintiff signed an "Employee Departure Report" form which noted his "separation" from the Medical Treatment Division of the Department of Mental Health and listed the reason given as "resignation". On that same date, a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

"Service Rating Report" was issued regarding plaintiff's service with the department. That report stated:

"Since commencing his employment (April 18, 1976) with Plymouth Center for Human Development, Department of Mental Health, State of Michigan, Mr. Frank Watassek has shown overt sensitivity to the needs of the residents of living area, K-4. Because of this overt sensitivity, his performance has been unsatisfactory. This overt sensitivity has both affected his program priorities, work judgment, and too has created frequent instances of confusion with attending nurse 03 staff. It is the opinion of this Administrator that this overt sensitivity to the needs and wants of the residents could bring dissension to the program and therefore, it is recommended that appropriate steps be taken to terminate said persons[sic] employment immediately."

On June 2, 1976, plaintiff filed a grievance on "Grievance Procedure Form CSG-1" with the Michigan State Civil Service Commission. On the grievance form, plaintiff stated:

"I may have been dismissed as a reprisal for bringing charges of resident abuse against SME attendants at Plymouth Center for Human Development and in the process [of] questioning an incident I was involved in as well as the possible unwillingness of the administration to have dealt with the problem earlier. My interim review of only one month stated I should be terminated but I was given a S2 status without any comment [or] explanation. It was claimed I was overt[ly] sensitive. This seems a cop-out."

At that time, plaintiff felt that a just and fair solution of his grievance would be to return him to his work so that he could gain the experience necessary for a master's degree in clinical psychology.

On June 18, 1976, the director of the depart-

ment, Donald C. Smith, M.D., without a hearing, but after reviewing plaintiff's grievance, the "Employee Departure Report", and the "Service Rating Report", made the following determination:

"Agency records disclose that Mr. Watassek, Attendant Nurse 03, was hired by the agency on April 18, 1976. Thereafter he was given an interim unsatisfactory service rating on May 20, 1976. It is reported that Mr. Watassek read the evaluation and stated that he could not work at the agency any longer; therefore, [he] signed an Employee Departure Report on the same day. The document indicates that he resigned.

"I have examined the presented facts and fail to find that the resignation was not voluntary. Therefore, it shall stand."

Plaintiff did not appeal that decision further. Today, however, he claims that he did seek administrative review of his termination but was notified that he could not do so because he was on probationary employee status. That notification came in the form of a letter from Ivan E. Estes, Personnel Director for the Department of Mental Health. In the letter, Estes informed plaintiff that the grievance review which was scheduled for Tuesday, June 15, 1976, was cancelled for the reasons that (1) plaintiff resigned, (2) plaintiff was a probationary employee, and (3) there were no provisions in the Grievance and Appeals Procedure for Employees in the State Civil Service for a review of a resignation of a probationary employee. Furthermore, Estes stated that "there is no supporting evidence that this was other than a voluntary resignation".

On May 18, 1978, plaintiff commenced this action in the Court of Claims alleging that he was terminated "without cause and out of retaliation" and "[a]t no time did the Plaintiff intend to, nor

attempt to, voluntarily resign his position as Attendant Nurse 03; rather at all times, Plaintiff believed he had been fired". He prayed for money damages to compensate him for wrongful discharge. Plaintiff also brought a libel action against the department but later dismissed that claim voluntarily.

On June 13, 1978, defendant filed a motion for accelerated judgment on the ground that the Court of Claims lacked subject-matter jurisdiction over plaintiff's action, GCR 1963, 116.1(2). On April 30, 1979, the trial court denied defendant's motion. A motion for reconsideration based on *Bays v Dep't of State Police,* 89 Mich App 356; 280 NW2d 526 (1979), was denied on July 24, 1980.

On October 25, 1982, defendant brought a motion for summary judgment pursuant to GCR 1963, 117.2(1) (failure to state a claim upon which relief can be granted). At the hearing on December 8, 1982, the defendant argued that the Civil Service Commission is vested with exclusive jurisdiction over the instant matter and that the circuit court is the proper court to review that agency's final decisions. After hearing oral argument, the Court of Claims judge stated:

*"The Court:* I guess I disagree with the notion that he is somehow compelled to—unless you can present a case that indicates that to me—that he is compelled to exhaust administrative remedies to the final degree before he can assert a Claim for money damages to a wrongful discharge

* * *

"I am not aware of any authority that somehow *[sic]* has to exhaust administrative remedies before they assert money damages for a wrongful discharge. None of the cases you cite here—although some present points that have bearing on the issue—none of them suggest there is such a requirement.

"All cases talk about reinstatement. Presumably, the person coming to the forum in each of the cases wants to be reinstated or wants to get back some of the employment rights.

"This man does not ask for reinstatement of seniority or anything like that. He just says I was wrongfully discharged. I have been damaged and I am entitled to be reimbursed for the damages I have suffered.

"So I don't see any basis upon which I will grant the Motion and I will deny Motion for Summary Judgment."

We granted leave to consider whether the complaint filed in this case states a claim upon which relief can be granted. The specific question before the Court is whether a civil service employee has an original cause of action against the Michigan Department of Mental Health for retaliatory discharge.

Defendant makes two arguments in support of its position. First of all, defendant argues that the Court of Claims cannot exercise subject-matter jurisdiction over plaintiff's retaliatory discharge claim because the Civil Service Commission has exclusive authority to regulate all conditions of employment for classified employees, with appellate jurisdiction vested in the circuit courts. Const 1963, art 11, § 5; MCL 600.631; MSA 27A.631. To support its position, defendant cites the case of *Bays v Dep't of State Police, supra.*

Second, defendant argues that in any event the plaintiff is precluded from bringing suit in the Court of Claims because he failed to exhaust his administrative remedies under the Civil Service Act. See *Judges of the 74th Judicial Dist v Bay County,* 385 Mich 710, 728; 190 NW2d 219 (1971).

In response, plaintiff points out first that his action is one for money damages, not for job reinstatement. Thus he argues that the remedy he

seeks is not one that is available through the civil service grievance and appeals procedure and that therefore only the Court of Claims can entertain this action.

Second, plaintiff characterizes the exhaustion of administrative remedies requirement in the present context as a futile expenditure of effort, citing the case of *Trojan v Taylor Twp*, 352 Mich 636, 638-639; 91 NW2d 9 (1958).

It will not be necessary for this Court to reach the exhaustion of remedies issue because we agree that in any case it may have been futile for plaintiff to do so for the following reasons. Plaintiff had been advised by letter from the personnel director for the Department of Mental Health, Ivan E. Estes, that he had no grievance rights. If the contents of that letter are true, which is a point apparently conceded by the defendant, the plaintiff may have a cause of action for retaliatory discharge without the necessity of further administrative review. The law does not require a litigant to undertake a vain and useless act. *Trojan, supra. Hays v University of Michigan Regents,* 53 Mich App 605, 614; 220 NW2d 91 (1974). Plaintiff should have the opportunity to amend his complaint to plead facts in avoidance of the jurisdictional defect.

Contracts of employment for an indefinite term are generally considered to be terminable at the will of either party. Case law, however, establishes an exception where discharge would contravene a strong public policy. This Court held in *Sventko v Kroger Co,* 69 Mich App 644; 245 NW2d 151 (1976), that the discharge of an employee in retaliation for her filing of a lawful workers' compensation claim was inconsistent with public policy in this state and amounted to wrongful discharge. Similarly, a complaint alleging that the plaintiff's

employment was terminated because of his refusal to alter pollution control reports required by the state was found to state a claim upon which relief could be granted. *Trombetta v Detroit, T & I R Co,* 81 Mich App 489; 265 NW2d 385 (1978), *lv den* 403 Mich 855 (1978).

Under present law, plaintiff's job may have been protected by the provisions of the Whistleblowers' Protection Act, MCL 15.361 *et seq.;* MSA 17.428(1) *et seq.,* which prohibits an employer from discharging or discriminating against an employee who reports a suspected violation of a law, regulation, or rule. MCL 15.362; MSA 17.428(2). Although this statute took effect in 1981, well after the action complained of in this case, we nevertheless find that the statute is evidence of a recognized public policy pre-existing its actual enactment. Therefore, we hold that it was contrary to public policy in 1976 for an employer to discharge an employee in retaliation for reporting abuses committed on patients in the Plymouth Center for Human Development. For that reason, the complaint does state a claim upon which relief may be granted.

Defendant argues however that even if the complaint does state a cause of action governmental immunity nevertheless constitutes a bar to plaintiff's claim. We agree that this would be correct if the claim sounded in tort, but an action *ex contractu* is cognizable against the state in the Court of Claims. MCL 600.6419; MSA 27A.6419. As the Supreme Court discussed in *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980), *reh den* 409 Mich 1101 (1980), *cf., Valentine v General American Credit, Inc,* 420 Mich 256; 362 NW2d 628 (1984), an action for wrongful discharge is one mainly *ex contractu.* An action claiming retaliatory discharge is an

action asserting a specific type of wrongful discharge and thus constitutes a contract action. Although we are mindful of the case of *Goins v Ford Motor Co,* 131 Mich App 185, 198; 347 NW2d 184 (1983), *lv gtd* 422 Mich 857 (1985), wherein this Court ruled that an action for retaliatory discharge was one in tort, we can find no rational basis to label one wrongful discharge a contract and the other a tort. Moreover, we find that the *Goins* panel's reliance on *Sventko, supra,* is misplaced; that case did not in fact determine that the action was one in tort. Although the *Goins* panel also relied on *Scott v Union Tank Car Co,* 75 Ind App 150; 402 NE2d 992 (1980), a case in which the Indiana Appeals court ruled, on facts similar to those in *Sventko,* that the claim sounded in tort, we note with approval the lengthy dissent which reasons that the claim is better characterized as one in contract. Finally, the *Trombetta, supra,* and *Sventko, supra,* cases consider the issue of wrongful discharge in terms of an employment contract and not as a tort. Therefore, for all the reasons discussed, we hold that plaintiff's claim is not barred by governmental immunity.

Lastly, even if this action were characterized as one in tort, defendant's claim of governmental immunity must nonetheless fail. Although the recent Supreme Court opinion in *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW 2d 641 (1984), limited the ability to sue the government in tort, it left intact the exception to governmental immunity occasioned by intentional torts. *Lockaby v Wayne County,* 406 Mich 65; 276 NW2d 1 (1979). It would be difficult to envision defendant's act as anything but an intentional one. Plaintiff should have an opportunity to amend his complaint, if necessary, to avoid governmental immunity before any further summary action is taken. *Ben P Fyke*

*& Sons v Gunter Co,* 390 Mich 649; 213 NW2d 134 (1973). See also *Hanon v Barber,* 99 Mich App 851; 298 NW2d 866 (1980).

Remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs, a question of public importance being involved.

CYNAR, J., concurred.

SHEPHERD, P.J., concurred in the result and in the conclusion that this is a contract action. He expressed no opinion on the governmental immunity issue for the reason that, given the contract nature of the case, it is not necessary to decide that issue herein.